UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

FLEXTRONICS DA AMAZÔNIA LTDA.,
FLEXTRONICS TECNOLOGIA DO
BRASIL LTD., AND FLEXTRONICS
INDUSTRIES SINGAPORE LTD.,

                                 Plaintiffs,

              -against-

CRW PLASTICS USA, INC.,

                                 Defendant.

-------------------------------------------------------------------X

**REPORT &
<u>RECOMMENDATION</u>**

**21-CV-03863 (LLS) (JW)**

**To the Honorable Louis L. Stanton, United States District Judge:**

Plaintiffs Flextronics Da Amazonia Ltda. ("Masa"); Flextronics Technologia Do Brasil Ltd.; and Flextronics Industries Singapore Ltd. (collectively, "Plaintiffs") filed suit for breach of contract against Defendant CRW Plastics USA, Inc. ("Defendant" or "CRW USA") after Defendant failed to make contractually-required payments to Plaintiffs when non-party entities ("Purchasers") breached their financial obligations to Plaintiffs. Dkt. No. 1, ¶¶ 1–4, 59–60.

Following the Court's entry of Default Judgment against Defendant, the Honorable Louis L. Stanton referred the Inquest After Default to this Court on March 29, 2024. Dkt. No. 31–2. For the reasons that follow, this Court recommends awarding Plaintiffs BRL 32,231,879.25 in compensatory damages

for breach of contract and USD $220,215.78 in attorneys' fees and costs, plus pre-judgment interest to be calculated by the Clerk of Court.

## PROCEDURAL HISTORY

Plaintiffs filed suit on April 30, 2021 claiming, *inter alia*, breach of contract.[1]  Dkt. No. 1, ¶ 86.  On May 6, 2021, Defendant CRW USA was served with the Summons and Complaint but failed to answer.  See Dkt. Nos. 6, 9.  The Court entered default judgment against Defendant on March 29, 2024 and referred the Inquest After Default to this Court.  Dkt. Nos. 31–2.

## FACTUAL BACKGROUND

### A. The Parties

Plaintiffs Masa, Flextronics Technologia Do Brasil Ltd., and Flextronics Industries Singapore Ltd. are three international corporate entities engaged in the plastic molding business.  Dkt. No. 1, ¶¶ 1–4; Dkt. No. 39-1 at 4.  Defendant CRW USA is a company incorporated in Michigan.  Dkt. No. 1, ¶ 5.

### B. The four contracts

Plaintiffs and Defendant are bound by four interrelated contracts, through which Defendant committed to an irrevocable parent company guarantee of the financial obligations of non-party Purchasers under the Purchase Agreement, the

---

[1] Plaintiffs also prayed for an award of attorneys' fees and declaratory relief, the latter of which the Court granted in its default judgment against Defendant.  See Dkt. No. 31.

Lease Agreement, the Late Payment Agreement, and the Parent Guaranty.[2]  Dkt. No. 1, ¶¶ 11, 19, 49.  Defendant's irrevocable parent guarantee is the basis of Plaintiffs' breach of contract claim.  Dkt. No. 1, ¶ 1.

Plaintiffs allege damages under the Lease Agreement and the Late Payment Agreement.  Dkt. No. 37 at 3, 7–8.  The September 21, 2018 Lease Agreement permitted non-party Purchasers to operate the assets transferred to Purchasers through the Purchase Agreement.  Id.  Notably, the Lease Agreement also contains a clause apportioning attorneys' fees in the amount of 10% of total debt pre-litigation and 20% of the total debt post-litigation.  Dkt. No. 1, ¶ 28.

The Late Payment Agreement provides that one of the non-party Purchasers was to pay eight monthly installments of BRL 467,972.00 to Plaintiff Masa to remedy four months of missed payments under the Lease Agreement.[3,4]  Dkt. No. 1, ¶¶ 31–3.  The Late Payment Agreement further specifies that payments not timely made are subject to a 10% penalty plus interest of 1% per month.  Dkt. No. 1, ¶ 34.

Through the Parent Guaranty, Defendant promised to indemnify Plaintiffs for breaches of non-party Purchasers' payment obligations under the Purchase

---

[2] The Court's default judgment against Defendant confirms that CRW USA is responsible for payments under the Lease Agreement, notwithstanding the omission of explicit language in the Parent Guaranty.  See Dkt. No. 31.
[3] The non-party purchaser who failed to make payments under the Lease Agreement from November 2018 to February 2019 is MC Industria de Plasticos da Amazonia Ltda ("MC").  Dkt. No. 1, ¶ 9; Dkt. No. 1, ¶ 31.  Under the Late Payment Agreement and Parent Guaranty, MC's financial obligations to Plaintiffs are guaranteed by Defendant.  Dkt. No. 1, ¶ 49.
[4] Plaintiffs list the currency as "RBL" instead of "BRL" in error at Dkt. No. 1, ¶ 33.

Agreement, the Lease Agreement, and the Late Payment Agreement.  Dkt. No. 1, ¶ 49.  The Parent Guaranty also provides for reasonable attorneys' fees.  Dkt. No. 1, ¶ 46; Dkt. No. 1-2 "Lease Agreement," ¶ 3.5.1; Dkt. No. 1-3 "Parent Guaranty," ¶ 12.

## C. **Non-party Purchasers' breach of payment obligations to Plaintiffs**

Beginning on or about October 1, 2019, non-party Purchasers ceased to make payments under both the Lease Agreement and the Late Payment Agreement.  Dkt. No. 1, ¶ 36.  Having made no payments since, Purchasers remain in breach of their obligations under the Lease Agreement and the Late Payment Agreement.  Dkt. No. 1, ¶ 37.

## D. **Defendant's failure to fulfill its obligations under the Parent Guaranty**

On July 30, 2020 Plaintiffs provided Defendant notice of Purchasers' failures to perform their financial obligations and demanded payment of amounts then due to Plaintiffs under the Parent Guaranty.  Dkt. No. 1, ¶ 59.  Defendant did not render any payment to Plaintiffs.  Dkt. No. 1, ¶ 60.

On March 24, 2021 Plaintiffs provided Defendant a second formal written notice of their obligations under the Parent Guaranty and demanded payment.  Dkt. No. 1, ¶ 61–2.  Defendant did not remit any payments to Plaintiffs.  Id. Defendant continues to be in breach of the Parent Guaranty by having made no payments to Plaintiffs.  Id.

4

## CONCLUSIONS OF LAW

### A. <u>Jurisdiction and venue</u>

Subject matter jurisdiction and venue are proper under 28 U.S.C. § 1332 and 28 U.S.C. § 1931(c)(2), respectively. The Second Circuit ruled that the forum selection clause in the Parent Guaranty is mandatory and therefore provides a basis for personal jurisdiction over CRW USA in New York. Dkt. No. 21 at 9–10; Dkt. No. 29 at 11. <u>See</u> Parent Guaranty, ¶ 10.

### B. <u>Adequacy of Plaintiffs' breach of contract claim</u>

"Without a response from Defendants, this Court must first determine whether the allegations in Plaintiff's Complaint are sufficiently pleaded to establish Defendants' liability." <u>Lenard v. Design Studio</u>, No. 08-CV-10560 (JPO), 889 F.Supp.2d 518, 528 (S.D.N.Y. 2012). <u>See</u> <u>Bambu Sales, Inc. v. Ozak Trading, Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995) ("A default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability.") (citation and internal quotation marks omitted). <u>See also</u> <u>PSG Poker, LLC v. DeRosa–Grund</u>, No. 06-CV-1104 (DLC) (JCF), 2008 WL 2755835, at *3 (S.D.N.Y. July 14, 2008) ("Where an inquest is conducted following a default judgment, it is generally necessary for the Court to determine whether the allegations of the complaint, taken as true, are sufficient to establish the defendant's liability."*)*, <u>report and recommendation adopted</u>, 2008 WL 3852051, at *1 (S.D.N.Y. Aug. 15, 2008).

Here, the allegations of Plaintiffs' Complaint, taken as true, establish Defendant's liability for breach of contract under New York law.  A breach of contract claim under New York law requires pleading (1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages to the plaintiff.  Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir. 2000).  All four elements are pleaded here.

First, by "provid[ing] specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached," Plaintiffs have sufficiently pleaded the existence of the Parent Guaranty, the Lease Agreement, and the Late Payment Agreement contracts with Defendant. Dkt. No. 1, ¶¶ 31, 54, 65.  Levy v. Bessemer Trust Co., No. 97-CV-1785 (JFK), 1997 WL 431079, at *5 (S.D.N.Y. Jul. 30, 1997) (citations omitted).

Second, Plaintiffs have performed all of their obligations under the Parent Guaranty and interconnected contracts.  Dkt. No. 1, ¶ 68.  Through the transfer of assets and leasing of property, Plaintiffs fulfilled their obligations to Defendant through the Parent Guaranty and the intertwined Purchase Agreement, Lease Agreement, and Late Payment Agreements.  Id.  Dkt. No. 1 at ¶ 23.  See Vista Food Exchange, Inc. v. Lawson Foods, LLC, No. 17-CV-07454 (ALC) (SN), 2022 WL 2530796, at *4 (S.D.N.Y. 2022) (finding that the non-breaching party fulfilled its contractual obligations by selling the agreed-upon item).

Third, Defendant breached the Parent Guaranty when it failed to remit payment due following notice of Purchasers' failures to maintain their financial

6

obligations to Plaintiffs.  Dkt. No. 1, ¶¶ 37–8.  See ARP Films, Inc. v. Marvel Entm't Grp., Inc., 952 F.2d 643, 649 (2d Cir. 1991) ("failing to tender payment is generally deemed a breach of a contract").  See also Southern Industries of Clover, Ltd. v. Hardick, No. 92-CV-5750 (BN), 21 F.Supp.2d 406, 410 (S.D.N.Y. 1998) (refusing to pay undisputed balance as guarantor constitutes breach of contract).

Fourth, Plaintiffs have pleaded damages incurred but for Defendant's breach of the Parent Guaranty.  Dkt. No. 1, ¶¶ 38–9, 69–70, 74.  Because Defendant has failed to remit payment as required by the Parent Guaranty and interrelated contracts, Plaintiffs are owed in excess of BRL 12,647,407.55, exclusive of late fees, charges, interest, and legal fees.  Id. at ¶ 74.  See AKF, Inc. v. Royal Pets Market & Resort Holdings, LLC, No. 22-CV-346 (MAD) (DJS), 2022 WL 16744192, at *3 (N.D.N.Y. Nov. 7, 2022) (finding that damages demonstrated by Defendant's unpaid receipts support a valid breach of contract claim).

### C. Adequacy of support for contract damages

#### a. Inquest without conducting a hearing

This Court recommends calculating damages without conducting an evidentiary hearing.  While Rule 55(b)(2) states that a Court may conduct a hearing to assess the amount of damages that should be awarded on a default, the Second Circuit has consistently held it is within the court's discretion to determine whether a hearing is necessary.  See Fed. R. Civ. P. 55(b)(2); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir.1993) (observing that judges have ample discretion to determine

whether an inquest needs to be held).  See also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir.1991) (ruling that Fed.R.Civ.P. 55(b)(2) "allows but does not require ... a hearing").

As is the case here, the Court may determine damages on its own when the documentary evidence submitted to the Court provides sufficient bases to determine such damages.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (holding that "affidavits, evidence, and oral presentations by opposing counsel" constitute a "sufficient basis from which to evaluate the fairness of the ... sum" without the need for a hearing on damages); Lenard v. Design Studio, No. 08-CV-10560 (JPO), 889 F. Supp. 2d 518, 524, 526–27 (S.D.N.Y. 2012) (adopting report and recommendation on damages, issued after referral for inquest following default, without an evidentiary hearing).

### b.  Plaintiffs have demonstrated damages to a reasonable certainty

#### i.  Compensatory damages

Plaintiffs are entitled to compensatory damages equal to the total amounts due and owed under the Lease Agreement and Late Payment Agreement.  Under New York law, a party injured by breach of contract is entitled to be placed in the position it would have been had the contract been fulfilled according to its terms.  Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F. 3d 171, 185 (2d Cir. 2007) (citing Boyce v. Soundview Tech. Group, Inc., 464 F. 3d 376, 384 (2d Cir. 2006)).  Critically, damages "caused by a breach [are] determined as of the time of breach."  Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 825 (2d Cir. 1990).

Plaintiffs seek BRL 36,692,758.91 in compensatory damages, exclusive of pre-judgment interest and attorneys' fees. Dkt. No. 37, at 7–8. In their submissions, Plaintiffs divide their request for damages into 15 total categories between the Lease Agreement and the Late Payment Agreement. Id. Per the Lease Agreement, Plaintiffs assert damages of BRL 10,032,847.07 in unpaid rent; BRL 1,003,284.71 in one-time 10% late charges; BRL 9,075,256.39 in interest on the rent; BRL 950,794.67 for inflation on the rent; BRL 7,212,725.40 in electricity; BRL 138,844.89 in interest on the electricity; BRL 2,271,323.72 in inflation on the electricity; BRL 1,382,991.28 in condominium fees; BRL 448.62 in inflation on the condominium fees;[5] BRL 723,799.10 in other overdue amounts from 2018; and BRL 258,114.00 in inflation on the other overdue amounts. Dkt. No. 37 at 7–8; Dkt. No. 39-5 at 2–8. Under the Late Payment Agreement, Plaintiffs assert damages of BRL 1,403,376.00 in payment installments; BRL 140,337.60 in one-time 10% late charges; BRL 1,119,314.06 in interest in the unpaid installments; and BRL 980,198.65 in inflation. Id.

Where "[i]t is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of breach," Plaintiffs' request for damages based on adjustments for inflation should be denied. M&J Mechanical Corp. v. Caldwell & Walsh Building Construction, Inc., No. 24-CV-3336 (MMG) (RWL), 790 F.Supp.3d 334, 348 (citations omitted). Similar to how changes in currency exchange rates

---

[5] The box for "total" condominium fees was calculated in error, where Plaintiffs seem to have subtracted BRL 448.62 of inflation on condominium fees from the total condominium fees award. Dkt. No. 39-5 at 8.

following a breach are not considered when measuring damages, Plaintiffs' remedy is available through an award of pre-judgment interest rather than adjustments for inflation. Sharma v. Skaarup Ship Management Corp., 916 F.3d 820, 825 (2d Cir. 1990) (citing Parker v. Hoppe, 257 N.Y. 333, 340 (1931)) (ruling that damages for breach of contract are to be awarded "without any consideration to the purchasing value of the dollar").

Plaintiffs should be awarded compensatory damages of BRL 32,231,879.25, which reflects the combined sums due and owed between the Lease Agreement and the Late Payment Agreement less BRL 4,460,879.66, which is the sum of the damages Plaintiffs seek based on adjustments for inflation.[6]    Notably, Plaintiffs' total compensatory damages of BRL 32,231,879.25 should be used to calculate the prejudgment interest owed Plaintiffs under New York law, discussed *infra*.

### ii.  Pre-judgment interest

Plaintiffs also request pre-judgment interest on the award of compensatory damages for the breach of contract claim. Dkt. No. 37 at 13–14. "Under New York law, if a plaintiff prevails on a claim for breach of contract, that plaintiff is also entitled to pre-judgment interest." BASF Corporation v. Gabriel's Collision Norman Ave., Inc., No. 21-CV-1908 (ENV) (RER), 2022 WL 1407244, at *3. The statutory rate for pre-judgment interest is nine percent per annum under New York Law. See N.Y.

---

[6] This Court calculates the damages Plaintiffs seek for inflation by adding the five values submitted by Plaintiff for damages based on inflation. Dkt. No. 39-5. BRL 950,794.67 + BRL 2,271,323.72 + BRL 448.62 + BRL 258,114.00 + BRL 980,198.65 = BRL 4,460,879.66.

C.P.L.R. § 5004; <u>Arch Specialty Ins. Co. v. B & V Constr. Inc.</u>, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *7 (E.D.N.Y. Apr. 23, 2024).  Importantly, pre-judgment interest should be calculated "from the earliest ascertainable date the cause of action existed" until the date of final judgment.  N.Y. C.P.L.R. §§ 5001(b)-(c), 5004; <u>Guilbert v. Gardner</u>, 480 F.3d 140, 149 (2d Cir. 2007).  Further, New York law requires that pre-judgment interest be calculated "on a simple interest basis."  <u>Startable, Inc. v. Waft Perfume, Inc.</u>, No. 20-CV-7672 (LLS) (OTW), 2023 WL 2463870, at *3, <u>report and recommendation adopted</u>, (S.D.N.Y. Feb. 21, 2023).

This Court recommends calculating simple pre-judgment interest by multiplying the principal by the interest rate by the time period (the date the cause of action first existed through the date of final judgment).  <u>See</u> <u>Maldonado v. La Nueva Rampa, Inc.</u>, No. 10-CV-8195 (LLS) (JLC) 2012 WL 1669341, at *11, <u>report and recommendation adopted</u>, (S.D.N.Y. May 14, 2012) (calculating simple prejudgment interest using the formula above).  Accordingly, Plaintiffs should be awarded pre-judgment interest at an annual rate of nine percent on BRL 32,231,879.25 from October 1, 2019—the date Plaintiffs first had a valid cause of action—through the date of entry of final judgment.  Dkt. No. 1, ¶ 36.  The total amount of pre-judgment interest shall be calculated by the Clerk of Court.

### iii. Attorneys' fees

Plaintiffs also seek an award of attorneys' fees at a contracted-rate of 20% of the total recoverable damages or, alternatively, of $220,215.78 pursuant to litigation in this District and BRL 583,738.97 for litigation in Brazil.  Dkt. No. 37 at 7–8.  For the reasons that follow, this Court recommends awarding attorneys' fees in the amount of $220,215.78.  Dkt. No. 1, ¶¶ 83–86; Dkt. No. 31, ¶ 3.

Under New York law, attorneys' fees are only recoverable if they are expressly contracted-for by the parties and are reasonable.  Alland v. Consumers Credit Corp., 476 F.2d 951, 955-56 (2d Cir. 1973); Artnet Worldwide Corp. Inc. v. Gruber, No. 21-CV-10459 (JHR) (KHP), 2024 WL 5245562, at *4 (S.D.N.Y. July 22, 2024).  Additionally, District Courts "may not award fees for work performed in related cases in other jurisdictions."  Stryker Corp. v. Intermedics Orthopedics, Inc., 898 F.Supp. 116, 124 (E.D.N.Y. 1995).  See Pay Television of Greater New York v. Sheridan, 766 F.2d 92, 94 (2d Cir. 1985) (holding that "the district court is limited to setting fees that arise from the underlying action; it may not set fees for work done on related actions").  See also Joint Stock Company "Channel One Worldwide" v. Russian TV Company, Inc., et al., No. 18-CV-2318 (LGS) (BCM), 714 F. Supp. 3d 294, 307–8 (S.D.N.Y. 2024) (ruling that failed claims using unrelated facts and legal theories are to "'be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim'") (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).  To be reasonable "requires only that there be an appropriate demonstration that the quantity and quality of legal services actually

rendered are such as to warrant, on a *quantum meruit* basis, [the clause's] full percentage." First. Nat. Bank of East Islip v. Brower, 42 N.Y.2d 471, 474 (1977) (citing Equitable Lbr. Corp. v. IPA Land Dev. Corp., 38 N.Y.2d 516, 381 (1976)) (emphasis in original). Courts have regularly found that attorney's fee clauses of 15-20% of total recoverable damages are not warranted. See Marine Midland Bank, N.A. v. Scallen, 554 N.Y.S.2d 541, 543 (App. Div. 1990) (finding that attorneys' fees calculated at 15% of $202,666.70 is unreasonable). See also Orix Fin. Servs., Inc. v. Gilbert Timber Company, Inc., No. 05-CV-8037 (BSJ), 2008 WL 11517216, at *5–6 (S.D.N.Y. July 22, 2008) (holding that attorneys' fees in an amount of 20% of $724,055.28 is "patently unreasonable").[7]

Plaintiffs should be awarded their actual attorneys' fees for work performed in this District because the contractual 20% attorney's fee clause would award an unreasonably large amount of fees. Plaintiffs' actual cost of litigation in this District is USD $220,215.78; in contrast, 20% of the total recoverable damages is BRL 6,446,375.85.[8] Using today's exchange rate of BRL 1 to USD 0.19, 20% of total recoverable damages would be USD $1,207,638.79. Although a 20% attorney's fee clause is not *per se* unreasonable, an attorneys' fee award of over $900,000 more than Plaintiffs' actual legal costs is inappropriate. Brower, 42 N.Y.2d at 474. Instead,

---

[7] See also Orix Fin. Servs., Inc. v. Enlow, No. 06-CV-13604 (DC), 2007 WL 3224536, at *5 (S.D.N.Y. Nov. 1, 2007); and Orix Fin. Servs., Inc. v. Precision Charters, No. 05-CV-9346 (KMW), 2007 WL 2042499, at *3 (S.D.N.Y. July 13, 2007) (holding that attorneys' fees equal to 20% of damages are too high).

[8] This Court calculates 20% of total recoverable damages by multiplying Plaintiffs' compensatory damages—BRL 32,231,879.25—by 0.20.

13

awarding the actual costs of litigation is directly aligned with New York Law's preference for a *quantum meruit* measure for the costs of litigation. Id. at 473–74. Moreover, because "[t]he district court's jurisdiction to fix fees stem[s] from its power to control the case before it," Plaintiffs' request for BRL 583,738.97 in attorneys' fees pursuant to work performed in Brazilian legal cases should be denied because the litigation was performed outside of this District. Pay Television of Greater New York, 766 F.2d 92 at 94. Stryker Corp., 898 F.Supp. at 124. Plaintiffs' calculation of $220,215.78—representing the actual cost of litigation in this District—is the appropriate award under New York law. As such, this Court recommends that Plaintiffs are awarded attorneys' fees of USD $220,215.78.

## CONCLUSION

For the reasons set forth above, the Court should award Plaintiffs BRL 32,231,879.25 in compensatory damages with pre-judgment interest at the rate of 9% per year from October 1, 2019, to the date of judgment, to be calculated by the Clerk of Court. Plaintiffs should further be awarded USD $220,215.78 in attorneys' fees and costs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an

extension of time for filing objections must be directed to Judge Stanton.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:     New York, New York
                  December 12, 2025

_____
JENNIFER E. WILLIS
United States Magistrate Judge

15